## WALTER CORNELL vs. BENJAMIN C. JACKSON.

Where A. conveyed land to B., bounded on land of T., and A. and T. had previously agreed by parol on a different line from the true line, and had set up stakes to mark such line, the possession of the land by T. between the true and the conventional lines under such agreement, claiming title thereto, at the time of A.'s deed to B., was held to be a breach of the covenant of seizin in such deed.

A deed with covenants of seizin, warranty, and against incumbrances, containing also a condition that the covenants of warranty and against incumbrances should be limited in their operation to a specific portion of the land conveyed; it was held, that the covenant of seizin extended to the whole land.

A release of land to a third person does not prevent a grantee from recovering full damages against his grantor for a breach of the covenant of seizin.

Where the grantor, in a deed containing a covenant of seizin, proves not to be seized of part of the land purported to be conveyed, the measure of damages is such proportion of the purchase money as the value of the land of which the grantor is not seized bears to the value of the whole land.

If the grantor, in a deed containing covenants of seizin and warranty, after the execution of the deed, recovers land included in it, of which he was not in fact seized at th? time of making the deed, it will go to reduce the damages *pro tanto*, in an action for a breach of the covenant of seizin.

THIS was an action for covenant broken. The plaintiff, in his declaration, stated the conveyance of the land, as set forth in the former case between the parties, for breach of the covenant of warranty in the same deed, reported in 9 Met. 151. The plaintiff further alleged in his declaration, that the defendant, in said deed, covenanted "that he was lawfully seized in fee of the premises; that he had good right to sell and convey the same to the plaintiff; and that, as to that portion of the premises lying immediately next to the land of Joseph Pope, and extending three hundred and twenty feet westerly therefrom, the defendant covenanted that the same was free from all incumbrances, and that he would warrant ar.d defend the same to the plaintiff, his heirs and assigns, against the lawful claims and demands of all persons." The plaintiff further alleged in his declaration, that by virtue of the deed aforesaid, he ought to have been seized and possessed of the said granted premises, but that the defendant, at the time of the delivery of the deed, was not in fact lawfully ,eized and possessed of the same, or of any part thereof, but had been and then was disseized thereof by one Edward

Tuckerman, who died in 1840; and that the plaintiff, ever since the delivery of the deed, had been kept out of the premises by said Tuckerman and his devisees; and that the defendant had not kept his covenant, but had broken the same.

The case was submitted to the court upon a statement containing the facts proved on the trial of the former case, (see 9 Met. 151, 152,) and the following additional facts: Johnson Jackson died intestate in November, 1824, leaving a widow and two children, Mrs. Sparhawk and the defendant, who, at the time of the execution of the deed declared on, were actually seized and possessed from the conventional line between their land and Tuckerman's, up to the conventional line between their land and the land of Tolman and wife; and Tuckerman, at that time, was actually seized and possessed up to the first mentioned line. In December, 1833, the plaintiff released to Mrs. Sparhawk, then Mary S. Jackson, all his right in possession and in reversion to the land in question. The widow of Johnson Jackson died in November, 1839. In 1844, the defendant and Sparhawk and wife recovered of the heirs of Tuckerman, by suit in this court, the piece of land lying between the true line and the conventional line between themselves and Tuckerman; part of which land was embraced in the defendant's covenant of warranty in the deed declared on. And Tolman's widow recovered of Sparhawk and wife the land lying between the conventional and true dividing lines of their estates.

If the judgment should be for the plaintiff, the cause was to be referred to an assessor to assess the damages.

The case was argued and decided at a former term.

*B. R. Curtis,* for the plaintiff.

*G. Sparhawk,* for the defendant.

WILDE, J. The first question is, whether, by the facts agreed, it appears that the defendant, at the time of his conveyance to the plaintiff, was seized of the land conveyed; and we are clearly of opinion that he was not. The land conveyed is bounded southerly by land of Edward Tuckerman, and northerly by land of Joseph P. Tolman; and *it is*

admitted that conventional lines had been mutually agreed upon by the owners of these lots, which did not, as was afterwards ascertained, correspond with their true lines. But the land conveyed was construed to extend to the true lines of their lots, and not to the conventional lines before agreed to. This was determined in an action between the present parties in a former suit. (See 9 Met. 150.) It follows conclusively that the defendant, at the time of his deed of conveyance to the plaintiff, was not seized of the land lying between the conventional and true lines. This land was in possession of Edward Tuckerman, claiming title thereto, at the time of the conveyance to the plaintiff, and it is expressly agreed, in the statement of facts, that Tuckerman was actually so seized up to that line. Of this land, therefore, the defendant was not then seized ; for two parties cannot be actually seized of the same land, claiming the same by adverse titles.

The second question is, whether the defendant's covenant of seizin extended to the whole of the land lying between the conventional and the true lines, or is restricted to part only. The clause in the deed, as to this point, is thus : " It is understood by the grantee," (the plaintiff,) " that the covenants of warranty and against incumbrances, hereinafter contained, are to be considered as limited and restrained in their operation to that portion of the premises which lies immediately next to the land of Joseph Pope, and extending 320 feet therefrom." It was contended by the defendant's counsel, that the covenant of seizin was to be considered as limited in the same manner as the other covenants. If the parties had so intended, they would have so expressed their intention in the restricting clause. We cannot add to the language, unless it can be made clearly to appear that a word was omitted by mere mistake. Nothing of this kind appears in any part of the deed, but quite the contrary ; for if the intention of the parties was to limit all the covenants alike, it would undoubtedly have been so expressed. There was a good reason, probably, why a distinction was made between the

covenant of seizin and the other covenants; for if the plaintiff should have been evicted by a paramount title, it would have been a breach of the covenants of warranty, and against incumbrances; a paramount title being an incumbrance. But such a title does not affect the covenant of seizin. Most decidedly, therefore, the construction of the deed, contended for by the defendant's counsel on this point, cannot be maintained.

The third question relates to the amount of damages. The defendant's counsel maintains that the plaintiff is entitled to nominal damages only, because, as it is said, he has suffered no actual damage, as he has conveyed, by a deed of release to Mary S. Jackson, all his right and title to the land in dispute without any covenant of warranty, except as to any person's claiming from, by or under him. But we are of opinion, that such a rule of damage cannot be maintained on principle or authority. In the case of *Medbury* v. *Watson*, 6 Met. 246, it was proved that one of the plaintiffs had sold out his share of the property in dispute for the same amount which he gave; and it was objected that he, having sustained no loss, could not maintain the action for the defendant's fraudulent misrepresentations, by which the plaintiffs were induced to purchase of him the property in question, at a price much exceeding its value. But it was decided, that he was entitled to recover for the injury occasioned by such fraud, whatever disposition he afterwards made of the property; whether he sold it or gave it away. So, in the present case, the plaintiff had a right of action on the breach of the covenant of seizin, immediately after the delivery of the deed; and his release or sale of the property, years after, could not affect the amount of damages he was before entitled to recover. The plaintiff has a most just right to recover of the defendant, for the purpose of giving the amount recovered to Mary S. Jackson, or not, at his pleasure. We do not know, however, that the plaintiff will not sustain an injury by the failure of his title. It appears that he and Mary S. Jackson owned the land in question in common, and

43*

that they executed mutual releases, in order to make partition of the common property, and to hold their respective shares in severalty. Now it may be that Mary S. Jackson may be entitled to have a new partition. As to this, however, we give no opinion ; because all the facts, on which an opinion on that point would depend, are not stated ; and also because the question is immaterial in the decision. The plaintiff has paid money to the defendant for the purchase of an estate to which he has obtained no title, and he clearly has a right to recover the amount of the purchase money, whatever he may do with it.

The last question is, what is the rule of damage ? The defendant's counsel contend that it should be determined by the proportion in quantity which the land between the conventional and true lines bears to the residue of the land purchased. But this is not a just rule ; for the value may be unequal. The true and just rule is, that the proportional value, and not the quantity of the several parts of the land, should be the measure of damages. The plaintiff therefore is entitled to recover a part of the purchase money, with interest, in the proportion of the value of the land between the conventional and true lines, and the residue of the premises. To ascertain this proportional value, the case, by the agreement of the parties, is to be referred to an assessor, who is to assess the damages according to the rule now laid down.

---

The assessor made his report at the November term, 1846, assessing damages at \$189·92, in case the court should be of opinion that so much of the land recovered of Tuckerman by the defendant as was embraced by the covenants of warranty in the defendant's deed, and enured by way of estoppel to the plaintiff, should be excluded in the assessment of damages ; but if that portion of land was to be included, then at \$227·66. The question presented by the report was argued and decided at the March term, 1848.

BY THE COURT. If, by any means, the party is restored to his land before the assessment of damages, though it cannot purge the breach of covenant, it will reduce the damages *pro tanto.* *Judgment for the smaller sum*